MARY B. MURPHY, as Administratrix, etc., of JOHN JOSEPH MURPHY, Deceased, Respondent, *v.* LUDLUM STEEL COMPANY, Appellant.

Third Department, March 15, 1918.

**Master and servant — injury to employee while leaving private dwelling leased from his employer — death by fall of high tension electric wire on premises of employee — when employee not engaged in hazardous employment — right of administratrix to maintain action.**

A person employed in a hazardous occupation within the meaning of the Workmen's Compensation Law who rents from his employer as a private dwelling a tenement situated on a large tract of land owned by the employer, but over 800 feet distant from the employer's plant, and who,

while walking through his own yard on the way to the office building in company with his wife, was killed by the falling of a wire carrying high voltage electricity which was maintained by his employer, was not at the time engaged in a hazardous occupation upon the premises or plant of his employer, and hence his administratrix may maintain an action to recover for his death and is not restricted to a claim under the Workmen's Compensation Law.

Although it has been held that workmen on their way to and from their employer's plant, if still " upon the premises," are within the protection of the Workmen's Compensation Law, the word " premises " means not any lands which the employer may own, but rather the immediate premises or grounds upon which the plant is located.

As the decedent was carrying a basket of linen at the request of his wife, who conducted a restaurant in the defendant's office building of which the deceased was janitor, the jury were justified in rendering a verdict for the plaintiff based upon a finding that the decedent, at the time, was not engaged in his master's business or acting in the course of his employment.

KELLOGG, P. J., and WOODWARD, J., dissented, with opinion.

APPEAL by the defendant, Ludlum Steel Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 25th day of October, 1917, upon the verdict of a jury for $5,000, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*Andrew J. Nellis* and *Merwyn H. Nellis,* for the appellant.

*Daniel J. Dugan* and *Isadore Bookstein,* for the respondent.

H. T. KELLOGG, J.:

This is a negligence action in which damages resulting from the death of the husband of the plaintiff are sought to be recovered. Deceased was killed by the falling of a wire which carried a current of electricity of high voltage. The wire was maintained by the defendant, and it is not seriously contended that in reference to its maintenance there was freedom from negligence. The chief contention is that the deceased at the time of the accident was the employee of the defendant, and that recovery must be sought under the Workmen's Compensation Law.

The deceased was employed by the defendant as a janitor

of an office building.   The mills, offices and certain tenement
houses of the defendant were all situate upon a tract of land
of about seventy-five acres.   One of the tenements was occu-
pied by the deceased and his wife.   It was separately fenced
off, so that deceased possessed his own lawn, and his own
private way to the public street.   All the buildings consti-
tuting the plant were more than eight hundred feet away.
In order to get to the office building of which he was janitor,
deceased would pass through his own yard to the street,
down the street, and then upon the premises of the defendant.
Deceased paid the defendant a rental of ten dollars a month
for his house.   At the time of the accident he was in his own
front yard on his way to the office building, and the wire which
touched and killed him fell upon his premises.

The business of the employer and the occupation of the
deceased were hazardous.   The deceased, however, was not
engaged in his hazardous occupation " upon the premises or
at the plant " of his employer within the meaning of section 3,
subdivision 4, of the Workmen's Compensation Law.   It has
been held that workmen on their way to and from the plant,
not actually working, but about to work, or having just
worked, if still " upon the premises " are protected.   Evi-
dently the premises meant are not any lands which the
employer owns, but rather the immediate premises or grounds
upon which the plant is located.   Where, as in this case, a
workman lives in a house rented of the employer from which,
to get to the plant, he must go out upon a public street,
he is not while within his own dooryard, though on his way
to work, " upon the premises   *   *   *   of his employer "
within the meaning of the act.

Was the deceased, though away from the plant and premises
of the employer at the moment of the accident, acting " in the
course of his employment? "   He was carrying a basket of
linen to the plant, at the request of his wife, who conducted a
restaurant for the defendant in the office building of which
the deceased was janitor.   They left their house together at
about ten minutes to eight in the morning.   The wife started
with the basket from the door, but before they left their
premises handed it over to the deceased with a request that he
carry it.   It is contended that deceased was employed to

assist his wife, and that in carrying the basket he was, therefore, doing his master's work.

In finding a verdict for the plaintiff the jury necessarily determined that deceased was not so employed. That determination was sufficiently supported by the proof. The wife of the deceased had been employed for several months prior to the employment of the deceased. They were not employed together or at the same time. The wife testified that at the time of hiring of the deceased she was present and not a word was said about his assisting her; that he was to act as janitor, to take care of the office, to sweep it, to clean it, to wash windows and to cut the grass in front of the office; that he was to do no work in reference to the laundry or her work therein. She said that he did no such work and never carried her basket of washing; that usually he went to work at ten minutes to eight and she at ten; that this was the first occasion when going to work together he carried her basket. For the defense one witness testified that he told the deceased, when hiring him, that he was to help his wife in any way possible. Another witness testified that he frequently saw deceased carrying baskets of linen from his house to the office, but when pressed admitted that he did not know what the baskets contained. This is all the testimony given upon the subject. For us to decide that the two latter witnesses, rather than the wife, should be credited, is to usurp the functions of the jury. The evidence was ample to support a finding that the husband in carrying the basket was not doing work which he was employed to do and was not acting " in the course of his employment."

The judgment should be affirmed, with costs.

All concurred, except JOHN M. KELLOGG, P. J., dissenting in opinion in which WOODWARD, J., concurred.

JOHN M. KELLOGG, P. J. (dissenting):

The defendant has a large steel plant at Colonie, N. Y., of about seventy-five acres, upon which are the mills, workshops, office buildings, electric appliances, transformer house and tenements for housing certain of the employees.

The plaintiff and her husband were employed at the office

building and resided about 836 feet from it.  In front of the plant was a road, along which, and on the defendant's property, at the street line, was one of its electric-light wires carrying 550 volts.  The husband was due at the office about eight o'clock in the morning.  At about ten minutes to eight, the plaintiff and her husband started for the office building along the usual route, which necessarily went under the electric wire, and while *en route* and upon the defendant's property and plant, the electric wire fell, hitting him and causing his death.

The plant is operated by electricity.  An electric company delivered to the defendant, at its transformer house near the office building, an electric current of 10,800 volts which the defendant there reduced to 550 volts and carried it over its uncovered wires to the various places on the plant where work is to be done.  Such wires are not usually covered.  The wire causing the death ran from the transformer house to a pole outside of the house of the purchasing agent on the plant, and at this pole the current was reduced to 110 volts and taken into the house for lighting purposes.  It does not appear why the reduction did not take place at the transformer house rather than at the pole, but we must assume that in some way it was in the interest of the business to carry the high voltage along the street and make the reduction at the pole. None of the other houses for the employees had any use of the electric current.  It is evident that this high-tension wire was, by a severe wind the night before, brought in contact with the branches of a tree and fused, one end falling upon the ground and the other hanging from the tree.  By the judgment appealed from the plaintiff has recovered damages for the death of her husband on the ground that it resulted from the defendant's negligence.

It is clear, under section 11 of the Workmen's Compensation Law, that the action cannot be maintained if the accident to the intestate was fairly within the purview of that law. (*Shanahan* v. *Monarch Engineering Co.*, 219 N. Y. 469; *Winter* v. *Doelger Brewing Co., Inc.*, 175 App. Div. 796.)  That law is to be interpreted liberally for the protection of the employee and the employer who has complied with its terms. It was a part of the contract.  (*Matter of Ziegler*, 218 N. Y.

544.) The defendant had complied with the provisions of the law; therefore, if death benefits can be awarded the widow under the Workmen's Compensation Law, this action cannot be maintained.

The Workmen's Compensation Law must not be limited to the mere moments when the employee is actually at work; he is within its protection when he is upon the employer's premises and on his way to or from work unless he has turned aside for other purposes. (*Bylow* v. *St. Regis Paper Co.,* 179 App. Div. 555; *Matter of Leslie* v. *O'Connor & Richman, Inc.,* 220 N. Y. 672; *Matter of Di Paolo* v. *Crimmins Contracting Co.,* 219 id. 580; Bradbury Workmen's Compensation [3d ed.], 473.)

The facts above stated, standing alone, bring the case fairly within that law, and this action cannot be maintained unless the facts about to be mentioned change the situation.

The plaintiff and her husband lived in one of the houses at the plant. The wire which caused the death passed over the premises in front of that house and alongside of the road. In passing from the house to the road, in order to get to the office building, it was necessary for the occupants of the house to pass under the wire. It is claimed that the death came to the tenant by the negligence of the landlord rather than to an employee from the hazards of the employment. The trial court took that view of the case, but left it to the jury to determine whether in carrying the basket of laundry hereinafter referred to the decedent was doing an act of courtesy to his wife or a service to the company, holding, in substance, that the case was not within the Workmen's Compensation Law unless the decedent at the time was performing a service for the company other than that of going to his work. This view is too narrow; it reverses the presumption in favor of the claim being within the law and is too close a refinement upon the relation of the parties and sacrifices substance to technicality.

The deceased employee met his death upon the premises of the employer, while going to his work, and from a hazard of the employment. If we are in error upon this point, nevertheless the evidence shows that the accident occurred in the course of and arising out of the employment. Before the

husband entered the employ of the company the wife was employed by it in serving a midday meal at the restaurant in the office building, and also was performing the general duties of cleaning, dusting and caring for the offices in the building, at seven dollars per week. But the works were being enlarged, the office force was increased, new rooms were opened up in the office building for use, and the services were too much for her to perform alone. By an arrangement between the plaintiff, her husband and the company, she was to continue to serve the midday meal at the restaurant and assist him as might be required by him in the performance of his duties as janitor, for nine dollars per week. He, for his services as janitor, dusting, cleaning, caring for the office building, taking care of the walks, the lawn around the plant, building the fires in winter, shovelling snow and the general duties of a janitor, was to receive ten dollars per week. The employer was to have ten dollars per month for the use of the house. It was understood that the dusting, cleaning, scrubbing, caring for the windows and the general work in the offices must be performed outside of business hours. The office force arrived at the building about a quarter after eight in the morning and left about a quarter after five or later in the afternoon. Plaintiff ordinarily went to her work about ten o'clock in the morning. Flour and other material belonging to the defendant were kept at the house, and the plaintiff frequently prepared soups for service at the restaurant, at their house and also did certain baking at their house. The napkins, dishcloths and linen used at the restaurant were taken to the house and laundered by a woman there and taken back to the office by the plaintiff or her husband, and sometimes by the children of the laundress. The plaintiff frequently went to Albany to market for the restaurant, and when packages and boxes arrived for the restaurant, the husband opened them and put the things in their proper places, sometimes rendering her other assistance, for it is evidence that he frequently carried things for the restaurant between the office building and the house and the company knew of these usages.

At the time of the accident a basket of laundry for the

restaurant was to be carried from the house to the restaurant, and the plaintiff asked her husband to carry it. He took it and they started along the usual route for the office to begin work. She was going to Albany for supplies for the restaurant. As they were leaving the lawn the husband was hit by the wire and killed.

The defendant, by contract made with the husband and wife, engaged their services at the office building and was to house them. It probably felt that the work in the restaurant and in the other part of the building could be done more satisfactorily by a husband and wife than by strangers, and that each would have an interest in seeing that the work was properly done and give reasonable assistance to that end, and she, in suggesting the employment of her husband, undoubtedly had the same view. The work called for by the contract of employment is usually performed by the janitor and his family. It was necessarily understood that the husband and wife, in the performance of their services to the defendant, would show the courtesies and attentions and render the assistance each to the other which usually are incident to that relation. They were employed as husband and wife and were expected to render the services as such. The wife has the right, with the consent of the husband, to make a separate contract for her services outside of the household and receive her wages therefor, and in such a case it is presumed the contract is in her sole business and for her sole benefit. (Dom. Rel. Law, § 60.) It is evident that this contract was of a somewhat different nature. The husband and wife together made a single contract for their services and housing, and it is not entirely clear whether if the defendant defaulted in paying their wages that the husband could maintain an action for the nineteen dollars per week less the ten dollars per month for housing; or whether the wife could maintain a separate action for nine dollars per week and escape paying for any part of the housing; or whether a joint action could be maintained for the nineteen dollars per week, subject to a reduction of ten dollars per month for the housing. (*Holcomb* v. *Harris,* 166 N. Y. 257; *Birkbeck* v. *Ackroyd,* 74 id. 356; *Porter* v. *Dunn,* 131 id. 314, 317.)

Those questions must be determined when necessary, by

a consideration of all the circumstances and all the inferences which may arise from the contract and the relations of the parties and the acts done.    We express no opinion upon them, but conclude that under the presumptions raised by the Workmen's Compensation Law, section 21, it may be said, for the purposes of that law at least, that the husband had a certain duty to see that the work at the restaurant was properly performed and, if he performed his other duties and the wife was unable or indisposed to carry the laundry or to perform similar services, that it was his right and duty under the contract to carry the laundry and to perform similar services with reference to the restaurant business.    By doing such acts he did not abdicate the employment and occupy the position of a stranger to the defendant.

We have seen that some of the food for the restaurant was prepared at their home, over their stove and with their equipment, which we assume he owned.    Evidently the husband and wife treated the contract as a mutual affair, for the only rent paid was paid by her, assumably from the general fund or from the earnings of both.    She assisted him in his work and he assisted her more or less in hers.    The fact that the defendant made the contract with both, and that the work was to be performed at the same time and place and under the same circumstances, indicates that each in a way was to act with the other in the performance of the duties required by the contract which they had made and that each was to render assistance to the other in carrying out the contract.    The fact that after the husband's death the wages formerly paid to both were paid to her, and that she continued to reside in the house, employing such assistance as she desired at her own expense, indicates that in a way the work in and about the office building was treated as one job.    We must assume that the parties did not contemplate that the work called for by the agreement was to be done by each as a stranger to the other and to the work of the other.    The husband and wife, in a way, in the making and execution of the contract, were treated more as one person than as two separate employees who were strangers to each other and were engaged in separate jobs.    A single contract provided that all the work mentioned at the office was to be performed

by this family, and it mattered little who did a particular service or whether each did a particular part of a particular service. As head of the family, and a party to this agreement, the husband was charged with a certain duty with reference to the laundry, and apparently under the contract it was fairly within the purport of the agreement that the laundry, the soup and the other materials were to be carried back and forth when necessary without regard to which one of the contracting parties carried them. If either performed the work, the contract was being fairly performed. We cannot say that that duty devolved upon the wife as cook and meal server any more than it devolved upon him as the person having the general charge of the office building and restaurant. He may have carried the basket to relieve his wife from the burden; but it was his right and duty towards her, and it was his right and duty towards the employer to see that the basket was properly delivered at its destination.

If we assume that the wife was carrying the laundry from her house to the restaurant, and another employee *en route* for the office to begin his work, as an act of courtesy, had taken her burden at the street line and, while taking it, had been killed by the wire, he would be within the terms of the act. (*Matter of Waters* v. *Taylor Co.*, 218 N. Y. 248; *Matter of Martucci* v. *Hills Bros. Co.*, 171 App. Div. 370.) It is difficult to see how the husband can be treated otherwise.

In *Matter of Leslie* v. *O'Connor & Richman, Inc.* (220 N. Y. 672) the injured employee was the manager of a livery stable. The third and fourth floors above the stable were used as tenements, the top floor was occupied by him, and he " while going down stairs from his apartment fell and cut his forehead." It was held that the injury arose out of and in the course of his employment. In that case we find from the record that the employee at first received his wages and paid for the apartments, but later he was not charged for the apartment; in other words, his salary was increased by the amount he had been paying in rent.

In this case, while the employees paid for the use of the house, the fact remains that none but employees could be housed at the plant. They were occupying it so that they would be at all times near the office building to attend to their duties.

The occupation was for the direct convenience and profit of the employer. If they had not paid rent they probably would have received ten dollars per month less compensation. Whether they received full wages and paid for the housing, or had less wages and were housed free, is immaterial, as it does not change substantially the relation of the parties. The husband and wife were the employees of the defendant and, as a part of their contract, were to be housed on the premises, and he has met his death by a hazard of the employment. Refinements as to the technical relation of the parties are not necessary or profitable.

We have seen that the authorities distinctly hold that if an employee is injured in a hazardous employment upon the premises of the employer, while going to or from his employment, he is within the law. He must equally be within the law if while going to the plant he is injured solely by a hazard arising from and connected with its operation.

If we assume that an employee *en route* to the plant to begin work is injured by an explosion at the plant, resulting from a hazard of the business, just before he arrives upon the property of the employer, it would seem that his injury would be compensable. Ordinarily it is quite immaterial whether the injury is at the plant or upon the property of the employer. The question is, did the injury arise out of and in the course of the employment. If the employee is away from the plant while performing a duty relating to his hazardous employment, he is within the law. Where it is held that an employee is within the act while going to his work and receiving an injury while on the premises of the employer, where the injury does not arise from the hazard of the business, his presence upon the premises is necessary to justify the conclusion that the injury arose out of and in the course of the employment. But if the employee is injured while going to his work, and from a hazard of the employment itself, it is immaterial upon whose premises the accident happens, for he is within both the letter and the spirit of the law.

But if we are to give the matter a more technical consideration, we may well say, when we are speaking with reference to the electric wire and the current carried by it, that the defendant, in the operation of its plant, was in possession of

the place where the decedent was killed, and that the right of the decedent in the premises was a mere housing, which gave him no independent rights in the lot in conflict with the use the employer was making of the premises. He and the employer each had a partial use of the lawn. If we treat the decedent as a tenant, it is only in a qualified sense and not in a way to free the defendant from liability. If, after hours, the employee, while sitting at his stove, had been killed by the fall of the chimney of the house, a different question would arise. The operation of the plant and the risks of the employment would not then have contributed to the injury. There would then be a question whether a landlord's duty had been performed towards him. The chimney had no use except as a part of the house and had no connection with the plant or its operation. Quite probably such an injury would not arise out of and in the course of the employment. But the electric-light wire was not embraced in the occupancy. The decedent was in no way connected with the wire or its use; the wire was there only as a part of and an instrumentality of the plant, and while there subjected him at all times to the risks of the employment, which was distinct from any risk growing out of or connected with the house or lawn. The operation of the plant alone caused his death; if the plant had been shut down no injury could have befallen him. The wire was maintained and the current sent through it by his employer, in its capacity as such and not as an owner of the house. As the electric wire and current related solely to the plant outside of the premises occupied by the plaintiff and her husband, the premises must be considered as a part of the plant when we speak of them with reference to the electric wire and current. It is not quite clear, and perhaps not very material, whether there was a sidewalk in front of the premises and whether the wire was between the sidewalk and the road or on the lot at the roadside. Wherever it was, it was not a part of the premises occupied by the decedent but was a part of the employer's premises.

This law gives compensation without regard to fault, and in determining whether a case is fairly compensable we are to lay aside the question of fault and consider that the rule of the case will apply to other cases where there can be no remedy

outside of this law. There is less confusion if we consider the case without regard to fault and assume that no liability exists unless the case is within this law. We are not construing the law against the employee or his widow. The case may not be free from doubt, but a rule must be established which will be enforced equally in cases where there is negligence and in cases where there is none, so that the statute. must have a broad and liberal interpretation for the benefit of the employee as well as the employer and to bring within its provisions cases fairly within its spirit. The object of the law was to charge upon the ultimate consumer the losses from accident which would otherwise fall upon the injured employee, to give the employee a speedy and sure remedy and to save the employer who complies with it from other claims and actions. It was known that the ordinary action to recover damages was unsatisfactory, resulting in delays and expense, and frequently was disastrous to the employer or employee, and often to both. This statute was intended to do away with the delays and uncertainties, and to provide a remedy which may summarily be administered.

The act wisely provides that the question of fault does not enter into the merits of the claim. For that reason we have not considered, and it is unnecessary to consider, whether or not actionable negligence has been shown. That is beside the question. The only question is, do the facts, assisted by the presumption that the claim is within the Workmen's Compensation Law, entitle the wife to compensation thereunder. In my judgment she was entitled to compensation and for that reason cannot maintain this action.

The judgment and order should, therefore, be reversed and the complaint dismissed, with costs.

WOODWARD, J., concurred.

Judgment and order affirmed, with costs.