In the Matter of ERMELINDA GILIOTTI, Appellant, against HOFFMAN CATERING CO., INC., et al., Respondents.

STATE INDUSTRIAL BOARD, Appellant.

Workmen's compensation — master and servant — chef employed for definite term at weekly wage with room and board suffocated from fire in hotel after retirement to room — death due to injury arising out of and in course of employment.

An award under the Workmen's Compensation Law is properly made for the death of a chef employed for a definite term at a weekly wage together with room and board, who, at the end of the day's work, had retired to his room in a section of the hotel provided for the help and, while there, was suffocated to death by a fire which occurred in the hotel. The relation of employer and employee did not cease because the employee was off duty. There was a continuity of employment. Sleeping on the premises in a room provided by the employer in the servants' quarters was an incident of the employment, mutually beneficial to employer and employee, not a temporary suspension of it. And death arose out of the employment. The danger from fire to which the employee was exposed attached specially to the premises where he was employed; it was peculiar to the situation and a risk to which his employment exposed him.

*Matter of Giliotti* v. *Hoffman Catering Co.*, 221 App. Div. 205, reversed.

(Argued October 4, 1927; decided October 28, 1927.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered

May 17, 1927, reversing an award of the State Industrial
Board made under the Workmen's Compensation Law
and dismissing the claim.

*Lyman Stansky* for claimant, appellant.   The accident
resulting in the death of the claimants' decedent arose
out of and was in the course of his employment.   (*Heitz
v. Ruppert*, 218 N. Y. 148; *Allied Mutual Ins. Co. v.
De Jong*, 209 App. Div. 505; *Rheinward v. Builders'
Brick, etc., Co.*, 168 App. Div. 425; *Waters v. Taylor Co.*,
218 N. Y. 248; *Sturm v. Boker*, 150 U. S. 312; *Prince
Mfg. Co. v. Prince Metallic Bed Co.*, 135 N. Y. 24; *State
Treasurer v. Cohen*, 195 N. Y. Supp. 82; *Pope v. Merritt*,
177 App. Div. 69; *Bylow v. St. Regis Paper Co.*, 179 App.
Div. 555; *Martin v. Metropolitan Life Ins. Co.*, 197 App.
Div. 382; 233 N. Y. 653; *Lynch v. City of New York*,
242 N. Y. 115; *Matter of Devoe v. New York State Rail-
ways*, 218 N. Y. 318.)

*Albert Ottinger*, Attorney-General (*E. C. Aiken* of coun-
sel), for State Industrial Board, appellant.   The accident
to the employee arose out of and in the course of his
employment.   (*McCarter v. La Rock*, 240 N. Y. 382;
*Roberts v. Newcomb & Co.*, 234 N. Y. 553; *Filitti v. Le
Rode Homes Corp.*, 244 N. Y. 291; *Bandassi v. Molla*,
200 App. Div. 206; 234 N. Y. 554; *Ross v. Howieson*, 198
App. Div. 674; *Martin v. Metropolitan Life Ins. Co.*, 197
App. Div. 382; 233 N. Y. 653; *Moore v. Lehigh Valley
R. R. Co.*, 169 App. Div. 177; 217 N. Y. 627; *Domres
v. Syracuse Safe Co.*, 211 App. Div. 823; 240 N. Y. 611;
*Cudahy Packing Co. v. Parramore*, 263 U. S. 418; *Kowalek
v. New York Constr. R. R. Co.*, 229 N. Y. 489; *Lynch
v. City of New York*, 242 N. Y. 115.)

*T. Carlyle Jones* and *William A. Earl* for respondents.
The accident did not arise out of and in the course of
his employment.   (*Daly v. Bates & Roberts*, 224 N. Y.
126; *Davidson v. Pansy Waist Co.*, 240 N. Y. 584; *Kass*

v. *Hirschberg, Schutz & Co.*, 191 App. Div. 300; *Fraher* v. *Hotel McAlpin*, 210 App. Div. 817.)

POUND, J.   Michele Giliotti was employed as chef by the Hoffman Catering Co., Inc., which operated Hoffman's Inn at Valley Stream, N. Y., at a weekly wage of $50 together with room and board.   He was engaged, not as workmen often are, from day to day but for a definite term.   His status was practically that of a domestic servant in whose case it is an implied part of the contract of the employment that the employee shall sleep on the premises. He slept in a special section of the hotel provided for the help in a room that was solely his.   In the early morning of Monday, October 26, 1925, a fire occurred in the hotel from causes unknown.   Giliotti had retired to his room at the end of the day's work and while there was suffocated to death by the fire.   Monday was his day off and he was at liberty to leave when his work on Sunday night was finished, but he might and often did remain in his room for the night.

The accident happened during the period of his employment but that is not enough.   The question is whether his death was due to an injury arising out of and during the course of his employment.   (*Matter of Heitz* v. *Ruppert*, 218 N. Y. 148.)

Much stress is laid on the fact that the condition of his clothing and of the bed indicated that he was dressing himself to leave the premises when the fire occurred and that under the rule laid down by this court in *Matter of Lynch* v. *City of New York* (242 N. Y. 115) his employment continued as long as he was preparing to leave the premises of his employer.   The case does not rest on so narrow a foundation.   The relation of employer and employee did not cease because the employee was off duty.   There was a continuity of employment.   Sleeping on the premises in a room provided by the employer in the servants' quarters was an incident of the employment, mutually beneficial to

employer and employee, not a temporary suspension of it. The parties contemplated that Giliotti when not engaged in work should occupy his room because he was an employee. He was reasonably exercising a right which his contract of service authorized him to exercise. He did not become a boarder when he ceased to cook. Lord DUNEDIN in *Davidson & Co.* v. *M'Robb* ([1918] A. C. 304, 321) said: " It [in the course of employment] connotes, to my mind, the idea that the workman or servant is doing something which is part of his service to his employer or master. No doubt it need not be actual work, but it must, I think, be work, or the natural incidents connected with the class of work — *e. g.,* in the workman's case the taking of meals during the hours of labor; in the servant's, not only the taking of meals, but resting and sleeping, which follow from the fact that domestic servants generally live and sleep under the master's roof." And Lord ATKINSON in the same case said (p. 327): " In the case of a sailor who lives on board his ship, or an indoor servant who lives in his master's house, these words would of course cover and include things necessarily incidental to his service there — such as taking his meals, sleeping, resting, etc." The accident which resulted in Giliotti's death, therefore, arose during the course of his employment. The case is plainly distinguishable from *Philbin* v. *Hayes* (11 B. W. C. C. 85). There the employee was a common laborer, paid by the hour. He rented sleeping accommodations in a hut provided by his employer. There was no continuity in the course of his employment. When his day's work ended it was a matter of indifference to his employer where he lodged. It was held that he was not like a domestic servant, living in the hut upon any terms of contract for his employer's benefit that he should be there.

The more serious question is: Did the death arise out of his employment? He was injured not because he was engaged in some personal act, some private service to

himself, like taking a bath (*Davidson* v. *Pansy Waist Co.*, 240 N. Y. 584), or doing his washing (*Matter of Daly* v. *Bates & Roberts*, 224 N. Y. 126), or changing his clothes, but because a fire broke out in the place where he was employed. Neither was the danger one common to all, shared by anybody and everybody in the vicinity of the fire, as in the case of the exploding shell and the falling bomb. (*Matter of McCarter* v. *La Rock*, 240 N. Y. 282.) The danger from fire to which Giliotti was exposed attached specially to the premises where he was employed; it was peculiar to the situation and a risk to which his employment exposed him, in no way differing from the risk of injury from the collapse of the building. (*Matter of Filitti* v. *Lerode Homes Corporation*, 244 N. Y. 291.) If he had been on duty, no doubt could arise on this point. An accident due to fire springs from a risk peculiar to the particular locality of the work. If the employee were not in the burning building he would not be within the zone of danger. It follows that his employment called him into a place of potential danger from that source.

Other jurisdictions have held that when an accident happens under such circumstances, it arises out of and during the course of the employment. (*Holt Lumber Co.* v. *Industrial Comm.*, 168 Wis. 381.) It is of little consequence whether Giliotti had his trousers on or off or was preparing for bed or to leave the premises. He was where his employment took him at the time, and was exposed to a risk arising out of such employment.

The order of the Appellate Division should be reversed and the award of the State Industrial Board reinstated, with costs in this court and the Appellate Division.

KELLOGG, J. (dissenting). " In the course of employment " is a different thing from " during the period of employment." It connotes the idea that the employee is doing something which is part of his service to his

employer, or incidental thereto. (*Davidson & Co.* v. *M'Robb* ([1918] A. C. 304.) Ordinarily, sleeping upon the premises of the employer, in a house or room furnished or leased by him, forms no part of such service. In *Philbin* v. *Hayes* (11 B. W. C. C. 85) the employer furnished huts, with sleeping accommodations, for his employees, at a nominal charge per night. During a severe wind storm a hut, in which an employee was sleeping, was blown down and the employee was injured. It was held that he was not in the course of his employment. In *Murphy* v. *Ludlum Steel Co.* (182 App. Div. 139; affd., 227 N. Y. 634) an employee was supplied with a house, upon the premises of his employer, in which he lived and for which he paid rent. He was killed while going from the house to the factory of his employer upon the same premises. It was held that he was not in the course of his employment. It can make no difference that in these cases the employee was not given the use of his house as a part of his compensation. Clearly, the enjoyment of compensation by a servant does not involve a service performed for the master. If it were otherwise, a servant would be in the " course of his employment " when drinking intoxicating liquors purchased with his wages or attending at a theatre upon a ticket so purchased. Whether an employee receives money from his employer with which to rent a house from him, or, in lieu of moneys, receives the use of the house and a diminished wage from his employer, the case must be the same. In either event the enjoyment of the use is the enjoyment in part of the wage, a personal privilege rather than a servant's duty. It has been so held in two cases decided at the Appellate Division. (*Matter of Lauterbach* v. *Jarett*, 189 App. Div. 303, and *McQuivey* v. *International Railway Co.*, 210 App. Div. 507.) In the former, a janitress of an apartment building, who received the free use of an apartment therein, as a part of her compensation, was injured by the falling of

plaster from her kitchen ceiling. In the latter, an employee was burned to death while sleeping in the paint shop of his employer, the use of which was furnished free of charge. In each case it was held that the employee was not in the course of his employment. Of course a contract of employment may *require* the presence of the employee upon the premises at all times, in which case a service to the master is involved whenever the servant is present. The question must always be: Was the servant enjoying a privilege or performing a required service by remaining upon the premises? Thus, in the *McQuivey* case the court said: " Moreover, sleeping in the paint shop, whether permitted or not, was a mere privilege extended, and did not involve a service to the employer." In the case of a domestic servant, such as a waitress, a butler, a valet, a ladies' maid, it may be inferred from the well-known nature of the employment, without a special contract term so providing, that the employee is *required* to live upon the premises, in order that at all times he or she may be subject to call to perform some household duty, whether in the middle of the day or in the middle of the night. In the case of a hotel chef it seems to me that no such inference can be indulged. His place of work is in the kitchen. His service begins when he goes to the kitchen in the morning and ends when he leaves it at night. It does not appear in the case at bar that the employee, a chef in a restaurant, was subject to call or required to cook, when called, during the night. Yet to cook was his sole duty. Even the appellant, in his brief, says of this employee: " On each one of these nights, when he crossed the threshold of his room, after his day's work was done, he ceased to be covered by the act, as he had retired to his temporary home." For the reasons stated, I do not agree that the employee was in the course of his employment by reason of his presence in a bedroom furnished by the master when the accident occurred.

An accident does not " arise out of the employment " merely because the presence of the employee at the scene of an accident is occasioned thereby. (*Matter of McCarter* v. *La Rock*, 240 N. Y. 282; *Allcock* v. *Rogers*, 11 B. W. C. C. 149.) An accident which occurs must spring from one of the risks peculiar to the particular locality of the work. " An injury does not arise out of the employment unless the hazard causing it is, within rational apprehension, an attribute of or peculiar to the specific duties of the employment." (By COLLIN, J., in *Matter of Kowalek* v. *N. Y. Consol. R. R. Co.*, 229 N. Y. 489.) Of an employee injured by the falling of a cornice of a building adjoining a pit where he was digging, it was said by Judge CRANE in *Matter of Filitti* v. *Lerode Homes Corp.* (244 N. Y. 291): " The danger from the falling cornice attached to the spot where the claimant was at work; it was peculiar to the situation, and a risk which arose from working alongside or underneath a building." Of an employee who had been struck in the eye by an apple thrown in fun by a fellow-employee, it was said by CARDOZO, J., in *Matter of Leonbruno* v. *Champlain Silk Mills* (229 N. Y. 470): " He was brought by the conditions of his work ' within the zone of special danger.' " Again, it was said: " Whatever men and boys will do, when gathered together in such surroundings, at all events if it is something reasonably to be expected, was one of the perils of his service." In *Matter of McCarter* v. *La Rock* (*supra*) this court said that it was thoroughly committed " to an interpretation of our present statute which requires as the basis for an award a causal connection, apparent to a reasonable mind upon consideration of all the circumstances, between the conditions under which the work is required to be performed and the resulting injury; injury from an accident which need not have been foreseen or expected but which after the event must appear to have had its origin in a risk incidental to the employment and to have flowed from that

source as a rational consequence, and that there must be more than a mere location of the employee in the pathway of an accident entirely disconnected from his employment." In the case at bar the employee was killed by the burning of a building in a room in which he was present at the time of the fire. The cause of the fire is unknown. It does not appear that the building was of a peculiarly inflammable nature or that the fire arose from a defective stove, furnace, chimney, electric wire or other device, which subjected the building to a peculiar fire risk. The fire may have come from a spark alighting on the roof, or a lighted match or cigarette left upon the premises, or from many other causes not involving a risk inherent in the building. It did not appear " after the event " that the fire " had its origin in a risk incidental to the employment " or that it " flowed from that source as a rational consequence." It would be otherwise in the case of an injury from a falling building. In such a fall there is necessarily involved a structural weakness inherent in and peculiar to the building. It cannot be said, without proof, that a building which burns necessarily catches fire through some fire hazard inherent therein and peculiar thereto. For this reason I do not think that the accident was one which arose out of the employment.

I, therefore, favor an affirmance.

CARDOZO, Ch. J., CRANE, LEHMAN and O'BRIEN, JJ., concur with POUND, J.; KELLOGG, J., dissents in opinion in which ANDREWS, J., concurs.

Ordered accordingly.