In the Matter of the Claim of MRS. DAVID LEPOW, Respondent, against LEPOW KNITTING MILLS, INC., Employer, and ÆTNA CASUALTY & SURETY COMPANY, Insurance Carrier, Appellants. STATE INDUSTRIAL BOARD, Respondent.

Third Department, January 7, 1942.

*Frank L. Ward,* for the appellants.

*John J. Bennett, Jr., Attorney-General [Joseph A. McLaughlin* and *Isaac Frank, Assistant Attorneys-General,* of counsel], for the State Industrial Board.

*Samuel Israel,* for the claimant.

CRAPSER, J.   The proceeding was commenced by the filing of the employer's first report dated February 16, 1939, and the filing of the widow's claim dated February 16, 1939.

The referee, after a hearing, handed down a decision disallowing the claim. A memorandum of decision by a member of the Industrial Board was handed down on March 29, 1940, reversing the decision of the referee which disallowed the claim, and restored the case to the referee's calendar for the purpose of making an award.

Lepow Knitting Mills, Inc., were wholesalers and exporters of ladies' ready-to-wear garments in New York city.   David Lepow, deceased, president of the company, was employed by the Lepow Knitting Mills, Inc., as a salesman and sent to South Africa, where he traveled from place to place, and while there contracted what is known as malignant tertian malaria.   About ten days prior to December 25, 1938, he became ill, on which date the illness was diagnosed as above stated, and on December 28, 1938, died as a result of said illness.

The evidence shows that the only way in which such malaria can be contracted is by the bite of a mosquito and that such malaria is prevalent in the tropics, South Africa and Rhodesia; and the medical evidence shows that the period of incubation in this malignant type of malaria is between seven and fourteen days.

The deceased left New York about October 12, 1938, and he arrived in South Africa about November 4, 1938. Both the referee and the Board member found that there was no way of ascertaining what time of day or night or where the infection was transmitted to the deceased.

The claim was disallowed by the referee upon the ground that the accident did not arise out of and in the course of employment.

Nelle Swartz, a member of the Board, in a memorandum reversing the referee, said: " While it is not known nor can it be determined at just what time the deceased herein was bitten by the mosquito which caused the malignant tertian malaria, the Board hereby finds that he was bitten in South Africa or Southern Rhodesia, inasmuch as he arrived there on November 4, 1938, and became ill about December 15, 1938, and the medical evidence indicates the period of incubation is from seven to fourteen days. Whether he was bitten at night while sleeping, or while eating a meal, or while engaged in some purely personal act, the Board believes is irrelevant here."

The record does not disclose the terms of employment of the deceased except so far as to say that the average yearly earnings of said deceased were between $3,750 and $4,250, but the conditions of his employment, so far as the hours were concerned, were not disclosed by the record. There was testimony by a brother to the effect that he presumed the customers would see him during the regular business hours and when the deceased got through his average day's work or traveling that he would put up at some hotel. Further than that there is no evidence in the record as to whether he was to be continuously in the employ of the house from the time he left New York or only during the days that he worked.

In *Matter of Lief* v. *Walzer & Son* (248 App. Div. 651; affd., 272 N. Y. 542) a traveling salesman on a train sustained an injury when the train jolted, causing the bristles of the brush with which he was brushing his eyebrows to enter his eye; held compensable as arising out of and in the course of his employment, since the injury was caused not by the personal act of brushing the eyebrows but by the jolt of the train which was a risk growing out of his employment.

Where a chef, who slept in a special section of the employer's hotel provided for help, in a room that was solely his, was suffocated to death by a fire while in his room, the accident was held to have arisen during the course of employment, within the Workmen's Compensation Law. (*Matter of Giliotti* v. *Hoffman Catering Co.*, 246 N. Y. 279.)

In *Matter of Davidson* v. *Pansy Waist Co.* (240 N. Y. 584) a traveling salesman in the course of his employment stopped at the city of Detroit and engaged a room and bath at a hotel. During the day he used the room to display his line of merchandise. On the day of the injury he arose in the morning and fixed his samples to get ready for the day while dressed in his pajamas, and then went into the bathroom to take a bath. He slipped in the bathroom, grabbed a lever on the shower, fell, and was scalded by boiling water from the shower. The court held that the injury did not arise out of and in the course of his employment and reversed the award and dismissed the claim.

The Workmen's Compensation Law is not applicable to an injury which arose through a danger or hazard disassociated from and not inherent in the nature of the employment as its source and to which the employee would have been equally exposed apart from the employment. This conclusion is not affected by the fact that the employee would not, except for the employment, have been where such danger or hazard existed.

As respects the application of the Workmen's Compensation Law, the employment continues throughout transportation of the employee by the employer, if the parties by their contract of hiring positively or inferentially so stipulated, but not otherwise. (*Matter of Kowalek* v. *New York Consolidated R. R. Co.*, 229 N. Y. 489; *Matter of Heitz* v. *Ruppert*, 218 id. 148; *Campbell* v. *Clausen-Flanagan Brewery*, 183 App. Div. 499; *Kass* v. *Hirschberg, Schulz & Co.*, 191 id. 300.)

" The injury must be received (1) while the workman is doing the duty he is employed to perform and also (2) as a natural incident of the work. It must be one of the risks connected with the employment, flowing therefrom as a natural consequence and directly connected with the work." (*Matter of Heitz* v. *Ruppert*, 218 N. Y. 148.)

In *Matter of McCarter* v. *LaRock* (240 N. Y. 282) the claimant was at work on a building being erected by his employer; a shell which had been preserved on the adjoining premises as a souvenir of the war exploded and flying fragments not only injured him, but killed other people, and the decisive question was whether that was an accidental injury arising out of his employment. The Appellate Division affirmed the award made by the State Industrial Board (212 App. Div. 843), the Court of Appeals reversed and dismissed the claim on the ground that the accidental injury did not arise out of the employment within the meaning of the Workmen's Compensation Law. The court said: " The only supposed relation between the employment and the accident and the sole basis for

upholding an award, as we understand it, is that if the claimant had not been working on this particular house he would not have been hit by a fragment of the shell. The theory for upholding an award, therefore, becomes the naked one that if an accident happens causing injury to a workman because by reason of his employment he was in the place where he was, the necessary relationship between accident and employment is established and the accident is to be regarded as one arising out of the employment. We have thus far found ourselves unable to give that interpretation to our statute. * * * We have insisted that there must be some connection between accident and employment other than a mere physical location of the employee which placed him in the pathway of a cause producing injuries, no matter where or how that cause originated."

" It is not the law that mere proof of an accident without other evidence creates the presumption under section 21 of the Workmen's Compensation Law * * * that the accident arose out of and in the course of the employment. On the contrary, it has been frequently held, directly and indirectly, that there must be some evidence from which the conclusion can be drawn that the injuries did arise out of and in the course of the employment." (*Matter of Lorchitsky* v. *Gotham Folding Box Co.*, 230 N. Y. 8.) The only proof in the record before us is the proof of the death and the medical proof of what caused it and it is not sufficient to invoke a presumption in favor of the claimant under section 21 of the Workmen's Compensation Law.

The statute raising the presumption that a claim for compensation comes within the Workmen's Compensation Law, in the absence of substantial evidence to the contrary, was not intended to relieve completely an employee from the burden of showing that accidental injuries suffered by him actually were sustained in the course of his employment and arose out of the employment, and proof of an accident will give rise to statutory presumption only where some connection appears between the accident and the employment. (Workmen's Comp. Law, § 21; *Matter of Daus* v. *Gunderman & Sons, Inc.*, 283 N. Y. 459.)

The employer's first report of injury, filed February 16, 1939, in answer to question 24 was as follows: " Describe fully how accident occurred, and state what employee was doing when injured. While working contracted malignant Tertian Malaria."

It was signed by George J. Lepow, manager, Lepow Knitting Mills, Inc. He was sworn as a witness and he testified that he signed the employer's first report of injury in which he answered " ' While working contracted malignant Tertian Malaria? ' A. Yes." He was asked, " Q. Now, do you know in this case whether or

not he contracted it while he was actually working or while he was sleeping? * * * A. I do not know. Q. Do you know whether he contracted it in one place rather than another? A. I do not. Q. You do not know. You do not know whether he contracted it while walking on the street with a friend of his after business and after dinner? A. I do not know. Q. So that when you put down, ' While working contracted malignant Tertian Malaria,' you mean he was in Africa and contracted malignant tertian malaria? A. He was there solely on business and not on pleasure. Q. All you mean, he was in Africa— * * * A. Yes, yes, he was in Africa, yes."

So it is apparent that when the employer's first report of injury was filed the person signing it had no information which would warrant him in making the answer that he did in that report.

The accident to the deceased did not arise out of and in the course of his employment and the award and decision appealed from should be reversed and the claim dismissed, with costs to the appellant, the Ætna Casualty & Surety Company, insurance carrier, against the State Industrial Board.

HILL, P. J., SCHENCK and FOSTER, JJ., concur; BLISS, J., dissents, in an opinion.

BLISS, J. (dissenting). The claimant's husband was a traveling salesman for the employer which was engaged in the business of wholesaling and exporting ladies' " ready-to-wear." On October 12, 1938, he left New York on a business trip to Capetown, South Africa, where he arrived on November 4, 1938. Thereafter he traveled from place to place in South Africa and Southern Rhodesia taking orders which he forwarded by mail to his employer. On December 28, 1938, he died in South Africa from malignant tertian malaria which he contracted from the bite of a certain mosquito prevalent in the tropics. The employer admitted in its first report that the decedent contracted the disease while working and the proof shows that the decedent was in South Africa solely on business and not on any mission of his own. The period of incubation for the disease is from one to two weeks so that deceased was bitten at some time between December fourteenth and December twenty-first. During this period he was working continuously for his employer as his reports which were subsequently received in New York showed.

Decedent died as the result of a risk peculiar to his employment and to which he was exposed by his employment. His death arose out of his employment. We are told, however, that the award cannot be sustained because the proof does not show whether

or not he was bitten while he was actually at work. I do not concur in such a narrow construction of the Workmen's Compensation Law. Deceased's mission was solely one of business. He was engaged in the interest of his employer from the time he left New York until his death and he died as the result of such employment. Had the ship on which he traveled sunk while he was asleep and he had been drowned, there would be no doubt about his death being the result of an accident arising out of and in the course of his employment. So here, the exposure which resulted in his death was not caused by any personal act of his own and such risk was incidental and peculiar to his employment. (*Matter of Lief* v. *Walzer & Son*, 248 App. Div. 651; affd., 272 N. Y. 542; *Matter of Giliotti* v. *Hoffman Catering Co.*, 246 id. 279.) It was not an isolated, fortuitous occurrence of the kind which may happen anywhere and to which all persons alike are exposed without relation to the fact that the employment brought the deceased to the place of occurrence. It arose out of this deceased's particular contract which took him to a location where he was peculiarly subject to a risk resulting in his death and is thus analogous to a street risk. There was inherent in the course of and arising out of the performance of his contract in the tropics a risk attendant upon his place of travel quite as much as there are other recognized risks arising out of mode of travel generally where travel is required by the contract of employment.

The Workmen's Compensation Law protects the employee in such a case as this. Under section 21 it must be presumed that this claim comes within the statute. Proof of the accident will give rise to the statutory presumption only where some connection appears between the accident and the employment. (*Matter of Daus* v. *Gunderman & Sons, Inc.*, 283 N. Y. 459.) Here we have a direct connection between the accident and the employment in that the accident and death resulted directly from a risk to which the employment exposed the decedent.

I, therefore, dissent and vote to affirm.

Award and decision appealed from reversed and claim dismissed, with costs against the State Industrial Board.