José Domingo Malavé, Petitioner, *v.* Industrial Commission of Puerto Rico, etc., Respondent; Atlas Line, Inc., Employer.

No. 385. Argued May 3, 1948.—Decided July 6, 1948.

J. C. Santiago Matos for petitioner. Angel De Jesús Matos, M. Maldonado Pacheco, and Aída Casañas Marengo, counsel for the State Insurance Fund.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

José Domingo Malavé was working as chauffeur of the Atlas Line, Inc., an insured employer. In 1947 said company entered into a contract with the Ponce Baseball Club by virtue of which it bound itself to drive the players of said team to different towns of the Island where they had to play games during the 1946–47 season. On the day that the accident giving rise to this claim took place Malavé had taken the Ponce team to the city of Mayagüez. It is an admitted fact that among the duties of said chauffeur was to lodge in the same hotel as the players in case they should need the automobile either at day or at nighttime. On January 18, 1947, and after the players and the chauffeur had retired to sleep, the latter had to get up in the middle of the night to go to the toilet of the hotel and mistaking the door which led to that room he opened the one next to it which led to an outside alley and upon entering it he fell to the alley from the second floor of the hotel suffering several injuries.

The Manager of the State Insurance Fund denied the compensation claimed by the chauffeur and on appeal to the Industrial Commission the latter ratified his decision and denied its reconsideration on the ground that the doctrine established in Ríos v. Industrial Commission, 66 P.R.R. 385, was in point for we held there that in the absence of extraordinary circumstances, accidents sustained on public highways while going to or from work are noncompensable, and copying from the syllabus, "The provision in the Insular Police Regulations that Chiefs of Police shall be on duty wherever they might find themselves and whatever is their situation and to this effect they shall be considered always on duty,

only means that said chiefs shall be available for duty at any time"; and finally, also copying from the syllabus, that "Since an accident sustained by a Chief of Police while he was leaving his home and was trying to cross a small ditch between the gate of his house and the street, that is, while he was walking towards the automobile in which he was going to make an inspection of the police force under his command, is not one of the risks incurred in the course of his employment or as a consequence thereof, it is not compensable under the Workmen's Accident Compensation Act."

■ The present case should not be governed by our ruling in the *Ríos* case, *supra*. The facts are different and this case involves a legal question which is novel in this jurisdiction. The parties have not cited any case like it or similar to it and we have found none among our decisions. The main characteristic in this case is the obligation imposed on the petitioner by his employer to remain at all hours, during the day and night, subject to call by the players of the Ponce Baseball Club and to lodge in the same hotel as they. In other words, the relation of employer and employee did not cease because petitioner, as chauffeur, was not driving the players from one place to another at the time the accident occurred and had retired to sleep. As stated in *In the Mater of Giliotti* v. *Hoffman Catering Co., Inc.*, 246 N. Y. 279, 158 N. E. 621, cited with approval in *Scott* v. *Hoage,* 73 F. .2d 114: "There was a continuity of employment. Sleeping on the premises in a room provided by the employer in the servants' quarters was an incident of the employment, mutually beneficial to employer and employee, not a temporary suspension of it." In these cases it was held that the death of the employees caused by a fire arose as a consequence of the employment.

■■ In *Hot Lumber Co.* v. *Industrial Commission,* 170 N. W. 366 (Wis., 1919), the workmen were required to sleep in a camp furnished by the employer in bunks arranged one above the other; that after working hours while one of the

workmen was lying down in his bunk, which was the lower one, a piece of straw dropped from the bunk above his and lodged in his throat and he sustained damages. The Industrial Commission held that the accident was compensable. Upon affirming the decision, the court said:

"In the instant case it was part of the contract of employment that Bebeau should sleep on the premises in the bunk furnished by the lumber company. It was in the course of his employment to remain upon the premises nights and use the bunk furnished for him. Under such circumstances he was within the course of his employment. (Authorities)

"The general rule under the authorities is that when the contract of employment contemplates that the employé shall sleep upon the premises of the employer, the employé under such circumstances is considered to be performing services growing out of and incidental to such employment during the time he is on the premises of the employer." (Authorities)

In *Souza's Case*, 316 Mass. 332, 55 N.E. 2d 611 (Mass. 1944), it was held that the death of an employee as a result of a fire while he slept in a lodge house arose out of and in the course of his employment, where it appeared that his absence from home overnight was required by his work, that he was subject to call by his employer for work at any time, and that although he selected the lodging house, it was selected in accordance with the requirements of his work and the terms of his employment and he was reimbursed for the expense of his lodging by his employer. The Supreme Court · of Massachusetts stated the following:

"Staying at the lodging house in New Bedford involved a degree of risk from fire. The question is not whether that risk was greater than the similar risk at some other place where the employee might have stayed, or at his own home, if his employment had not called him away from home. The question is whether his employment brought him in contact with the risk that in fact caused his death. The correctness of this statement is illustrated by cases where compensation has been allowed for injuries sustained on the employer's own premises or the approaches to those premises by reason of slipping upon

stairs or floors or coming in contact with objects of a familiar kind which might equally well be encountered in other places. In such cases the inquiry has not been whether the danger was greater where the employee was injured than at his own home or at some other place where he might have been if he had not been where he was. *The inquiry has been whether his employment exposed him to the risk, whatever it was, which actually caused the injury.* (Authorities)

"Another established principle is that the employee, in order to be entitled to compensation, need not necessarily be engaged in the actual performance of work at the moment of injury. It is enough if he is upon his employer's premises occupying himself consistently with his contract of hire in some manner pertaining to or incidental to his employment. This principle has been applied in instances where the employee was resting (authorities), attending to a call of nature (authorities), getting fresh air (authorities), eating meals (authorities), going or coming by stair or elevator (authorities), travelling in a vehicle furnished by the employer (authorities), or washing his own clothes used in his work (authorities). *And where the employee is upon the premises and is subject to call the employment is regarded as continuous* and even includes a 'day off,' if the employee is still subject to call." (Authorities) (Italics ours.)

The difference between the instant case, those cited above and *Ríos* v. *Commission, supra,* lies in that in the latter the Chief of Police, even if according to the regulations he was considered on duty wherever he might be and whatever was his situation, as a matter of fact we held that on leaving his home he had not commenced to render services at the time the accident took place, while in the case at bar, as in the others cited, the employee, by virtue of the terms of the contract with his employer was actually in the course of his employment because he was subject, day and night, to comply with the orders of his employer. Petitioner's employment was of a continuous character from the time he left Ponce with the players of the Ponce Baseball Club until he returned with them to that city. During their stay in Mayagüez there was no interruption whatsoever in his employment even when he was not driving the automobile, inasmuch

as he had to remain day and night subject to any call and under the obligation to stay in the same hotel as the players. We are of the opinion that the accident in this case occurred in the course of his employment. We shall now pass on to determine whether it arose as a consequence of the employment.

May the claim be denied because of the fact that mistakenly the employee opened a door other than that leading to the toilet and consequently suffered a fall that caused him the injuries? We do not think so. In testifying before the Industrial Commission the petitioner explained the accident thus: ". . . at about twelve o'clock or half past twelve in the evening I got up to go to the toilet room; then *since I was not well acquainted with the hotel, it was the first time I lodged there*, I opened a door and it was the one next to the door leading to the toilet and then I fell out into the alley of the hotel"; that the door which he opened was the one "next to the toilet."

In discussing those cases of accident, "arising out of the employment", Horovitz in his Workmen's Compensation expresses himself in the following manner, on page 112:

"Must the injury arise out of the main work which produces the employee's wages? If hired to cut wood, or run a machine, does the protection cease when he goes for a drink of water to a near-by water-cooler placed there for that purpose? Or does the right to an award cease if, acting on an impulse of nature, he goes to the toilet and is injured on the way thereto or because of a defect in that room? Or if he is eating an employer-provided lunch, as permitted or required by the employer or by the nature of the employment, and he suffers food poisoning—does that arise 'out of' his employment?

"These acts of personal ministration are universally recognized as *incidents of the employment*. (Italics in the text.) Incidents of the employment say most states, are as well protected as the injuries on the main job; and so saying the courts begin to disagree as to what are incidents. In Wisconsin and New York, apparently, a travelling salesman may go to the toilet and be protected, *as an act of nature gives rise to an in-*

*cident*; but if he takes a bath *except in a room provided for that purpose by the employer,* he is doing something purely personal, engaging in something not incidental to his employment. The same salesman while lodging and sleeping in a hotel owned by the employer or in a stranger's hotel selected by the worker and paid for by the employer, in most states is protected from fire and *other hazards* without proof of increased risks, *as lodging thereby becomes a contractual incident of his employment."* (Italics ours.)

And see cases cited in footnotes 66 and 84 of said text.

As to this aspect, the case is not entirely novel in this jurisdiction. In *Cordero, Manager* v. *Industrial Commission,* 61 P.R.R. 349, without it having been shown what induced the workman to leave the premises wherein he worked as greaser in an electric plant to go into the lightning-rod shack which was outside of the machine house, but within the employer's premises, where he was found electrocuted, we held on page 356 that "the fact that the workman went out must be attributed to the necessity of performing an act common to human nature in order to continue in the discharge of his duties, and to misfortune, his contact with the wires of the lightning-rod, which were installed so near by the employer and were insufficiently protected" and that it was ". . . an act inherent to his employment that the workman left the house of the machines to get some fresh air or *to satisfy any other organic necessity* in order to continue the discharge of his duties." (Italics ours.) In said case we cited *Archivald* v. *Ott,* 87 S. E. 791, which explains the applicable doctrine thus:

"Such acts as are necessary to the life, comfort, and convenience of the servant while at work, *though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment.* A man must breathe and occasionally drink water while at work. In these and other conceivable instances he ministers unto himself, but in a remote sense these acts contribute to the furtherance of the work.

*Vennen* v. *New Dells Lumber Co.* (Wis.) 154 N. W. 640; *Zabriskie* v. *Erie R. Co.*, 85 N. J. Law 157, 88 Atl. 824. That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable *incidents.* Such dangers as attend them, therefore, are *incident dangers.* At the same time injuries occasioned by them are accidents resulting from the employment." (Italics ours.)

See, also 1 Schneider, Workmen's Compensation Law, 858, § 278, and cases cited therein.

Under the surrounding circumstances in the instant case which show that the workman was required to remain in the hotel during the night, that it was the first time that he lodged in said hotel and, therefore, was not acquainted with the exact situation of the door of the toilet and mistakenly opened the one next to it, which was neither locked nor incommunicated, despite the fact that it constituted a latent danger, inasmuch as it led to an alley on which the workman fell from the second story of the hotel, the accident should be considered as incidental to and as a consequence of petitioner's employment.

The decision appealed from should be reversed and the case remanded to the Industrial Commission for further proceedings.

Mr. Justice De Jesús did not participate herein.