José Domingo Malavé, recurrente, *v.* Comisión Industrial de Puerto Rico, Etc., demandada; Atlas Line, Inc., patrono.

Núm. 385.—*Sometido:* Mayo 3, 1948. *Resuelto:* Julio 6, 1948.

*J. C. Santiago Matos,* abogado del recurrente; *Angel De Jesús Matos, M. Maldonado Pacheco* y *Aída Casañas Marengo,* abogados del Fondo del Seguro del Estado.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

José Domingo Malavé trabajaba como chófer de la Atlas Line, Inc., patrono asegurado. En el año de 1947 di-

cha compañía tenía un contrato con el Ponce Baseball Club a virtud del cual se obligaba a conducir a los jugadores de dicho equipo a los diferentes pueblos de la Isla, donde tenían asignados juegos durante la temporada de 1946 a 1947. El día en que ocurrió el accidente objeto de reclamación en este caso, Malavé había llevado al equipo ponceño a la ciudad de Mayagüez. Es un hecho admitido que entre los deberes de dicho chófer estaba el de hospedarse en el mismo hotel que los peloteros por si éstos necesitaban usar el automóvil en cualquier momento, tanto de día como de noche. El 18 de enero de 1947, después de haberse retirado a dormir, tanto los peloteros como el chófer, éste tuvo necesidad de levantarse a media noche para ir al cuarto de servicio del hotel y por haber confundido la puerta que conducía a dicho cuarto abrió otra que quedaba al lado y que daba a un callejón y, al penetrar, cayó al callejón desde el segundo piso del hotel, sufriendo varias lesiones.

El Administrador del Fondo del Seguro del Estado denegó la compensación solicitada por el chófer y apelada la resolución a la Comisión Industrial, ésta la ratificó y luego se negó a reconsiderar, sosteniendo que al caso de autos es aplicable la doctrina establecida en el de *Ríos* v. *Comisión Industrial*, 66 D.P.R. 404, en el cual resolvimos que en ausencia de circunstancias excepcionales, accidentes sufridos en la vía pública al ir y venir del trabajo no son compensables y que, copiando del sumario, "La disposición en el Reglamento de la Policía Insular de que los Jefes de Policía prestarán servicios dondequiera que se encuentren y cualquiera que sea su situación, y a estos efectos se considerarán siempre de servicio, sólo significa que dichos Jefes estarán sujetos a servir en cualquier momento, y no que de hecho estén prestando servicio constantemente"; y por último, también citando del sumario, que "Un accidente ocurrídole a un Jefe de Policía al salir de su casa y disponerse a cruzar una zanja entre la verja de su casa y la calle, o sea al dirigirse

él hacia el automóvil en que había de realizar el trabajo de inspección de la fuerza a su mando, no siendo uno de los riesgos incurridos en el .curso de su trabajo ni como consecuencia del mismo contra los cuales asegure la Ley de Compensaciones por Accidentes del Trabajo, no es compensable.''

■ El presente caso no debe regirse por lo resuelto en el de *Ríos,* supra. Los hechos son distintos y presentan una cuestión legal nueva en esta jurisdicción. Las partes no han citado ningún caso similar o parecido y ninguno hemos encontrado en nuestra jurisprudencia. Lo que lo caracteriza es la obligación impuesta al recurrente por su patrono de permanecer a todas horas, de día y de noche, a disposición de los jugadores del Ponce Baseball Club y de hospedarse en el mismo hotel que ellos. En otras palabras, la relación de patrono y empleado no cesaba por el hecho de que el recurrente, como chófer, no estuviera conduciendo a los peloteros de un sitio a otro en el momento de ocurrirle el accidente y se hubiera retirado a dormir. Como se dice en el caso de *In the Matter of Giliotti* v. *Hoffman Catering Co., Inc.,* 246 N.Y. 279, 158 N.E. 621, citado con aprobación en el de *Scott* v. *Hoage,* 73 F.2d 114: ''Había una continuidad del empleo. El dormir en la propiedad en un cuarto provisto por el patrono en la parte destinada al servicio, era un incidente del empleo, mutuamente beneficioso al patrono y al empleado, y no una suspensión temporal del mismo.'' En estos casos se resolvió que la muerte ocurrida a los empleados como resultado de un fuego surgió como consecuencia del empleo.

■■ En el caso de *Holt Lumber Co.* v. *Industrial Comision,* 170 N.W. 366 (Wis., 1919), a los obreros se les requería por el patrono que durmieran en un campamento provisto por el patrono, en unas camas en forma de litera, una encima de la otra; estando acostado un obrero, después de las horas de trabajo, en su cama, que era la inferior, se cayó

de là de arriba una paja y se le introdujo en la garganta y sufrió daños. La Comisión Industrial resolvió que el accidente era compensable. Al confirmar la decisión la corte dijo:

"En el caso de autos, formaba parte del contrato de empleo que Bebeau durmiera en la propiedad en una litera suministrada por la compañía. Era en el curso de su empleo el permanecer de noche en dicha propiedad y dormir en la litera suministrada. Bajo tales circunstancias, estaba dentro del curso de su empleo. (Citas)

"La regla general de acuerdo con las autoridades es que cuando el contrato de empleo contempla que el empleado debe dormir en la propiedad del patrono, el empleado, bajo tales circunstancias, se considerará que está desempeñando servicios que surgen de y son incidentales a tal empleo durante el tiempo que esté en la propiedad del patrono." (Citas)

En *Souza's Case*, 316 Mass. 332, 55 N.E.2d 611 (Mass. 1944), se resolvió que la muerte de un empleado como consecuencia de un fuego mientras dormía en una casa de huéspedes surgió de y en el curso de su empleo, al probarse que su trabajo requería que estuviera ausente de su casa, que estaba sujeto a ser llamado por su patrono para trabajar en cualquier momento, y que, aun cuando él seleccionó la casa de huéspedes, fué seleccionada de acuerdo con lo que requería su trabajo y los términos de su empleo, y los gastos le eran reembolsados por su patrono. La Corte Suprema de Massachusetts se expresó así:

"El permanecer en la casa de huéspedes en New Bedford envolvía un grado de riesgo de ocurrir un fuego. La cuestión no es si el riesgo era mayor que el riesgo similar en algún otro sitio donde el empleado pudo haber permanecido, o en su propia casa, si su empleo no lo hubiera obligado a salir de su hogar. La cuestión es si su empleo lo trajo en contacto con el riesgo que de hecho le ocasionó la muerte. La corrección de esta afirmación es ilustrada por casos donde la compensación ha sido concedida por lesiones sufridas en la propiedad del patrono o sus accesos con motivo de resbalar en las escaleras o pisos o venir en contacto con objetos conocidos con los cuales uno pueda encontrarse en otros sitios. En tales casos la investigación no ha sido si el peligro era mayor donde el empleado sufrió la lesión que en su pro-

pia casa o en algún otro sitio en que pudo haber estado si no hubiera estado donde le ocurrió. *La investigación ha sido más bien si su empleo lo expuso al riesgo, cualquiera que fuera, que de hecho le causó la lesión.* (Citas) . . . Otro principio establecido es que el empleado, para tener derecho a la compensación, no tiene necesariamente que estar ocupado en el desempeño real de trabajo en el momento de la lesión. Es suficiente si está en la propiedad del patrono cumpliendo consistentemente con su contrato en alguna forma que concierna a o sea incidental a su empleo. Este principio ha sido aplicado a casos en que el empleado estaba descansando (citas), atendiendo a una necesidad humana o natural (cita), buscando aire fresco (cita), comiendo (cita), yendo o viniendo por una escalera o ascensor (citas), viajando en un vehículo suministrado por el patrono (cita), o lavando su ropa usada en el trabajo (cita). *Y cuando el empleado está en la propiedad del patrono y sujeto a ser llamado, el empleo se considera como continuo y hasta incluye un 'día de descanso', si el empleado continúa sujeto a ser llamado.''* (Citas) (Bastardillas nuestras.)

La distinción que hay entre el caso de autos, los que acabamos de citar y el de *Ríos* v. *Comisión,* supra, estriba en que en este último el Jefe de la Policía, aun cuando según el Reglamento se consideraba que prestaba servicios donde quiera que se encontrara y cualquiera que fuera su situación, como cuestión de hecho resolvimos que, al salir de su casa, no había comenzado a prestar servicios en el momento de ocurrirle el accidente, mientras que en el de autos, al igual que en los otros citados, el empleado, a virtud de los términos del contrato de su patrono, sí estaba en el curso de su empleo por estar sujeto, día y noche, a cumplir las órdenes que su patrono le había impuesto. El empleo del recurrente era uno de carácter continuo desde que salió de Ponce con los jugadores del Ponce Baseball Club hasta que regresara con ellos a dicha ciudad. Durante la permanencia en Mayagüez no hubo interrupción alguna en su empleo, aun cuando no estuviera manejando el automóvil, ya que tenía que estar día y noche pendiente de cualquier llamada y con la obligación de hospedarse en el mismo hotel que los

peloteros. Somos de opinión que el accidente en este caso ocurrió en el curso del empleo del recurrente. Veamos si ocurrió como consecuencia del empleo.

¿Es óbice a su reclamación el hecho de que, equivocadamente, abriera una puerta distinta a la del cuarto de servicio y como consecuencia sufriera la caída que le produjo las lesiones? Creemos que no. Al declarar ante la Comisión Industrial el recurrente explicó el accidente en esta forma: " . . . como a las doce o doce y media de la noche me levanté para ir al cuarto de servicio; entonces *como no conocía bien el hotel, fué la primera vez que dormí allí,* abrí una puerta y abrí la contraria que tenía que abrir para ir al servicio y entonces me caí al callejón del hotel"; que la puerta que abrió era "una que le quedaba al lado" de la del servicio.

Discutiendo estos casos que surgen como "incidentes del empleo", Horovitz en su obra sobre *Workmen's Compensation* se expresa en esta forma a la página 112:

"¿Debe la lesión ser consecuencia del trabajo principal que produce el salario del empleado? Si se le emplea para cortar leña o manejar una máquina, ¿cesa la protección cuando va a tomar agua a una refrigeradora puesta allí para ese fin? ¿O cesa el derecho a compensación si, actuando bajo un impulso de la naturaleza él va al cuarto de servicio y se lesiona al dirigirse a él o debido a un defecto en dicho cuarto? ¿O si está comiendo un almuerzo provisto por el patrono, según permitido o requerido por el patrono o por la naturaleza del empleo, y sufre un envenenamiento—surge eso 'en el curso' de su empleo?

"Estos actos de servicio personal son reconocidos universalmente como *incidentes del empleo.* (Bastardillas en el texto.) Incidentes del empleo, dicen la mayoría de los Estados, están tan bien protegidos como las lesiones en el empleo principal; y al así decirlo, las cortes empiezan a estar en desacuerdo en cuanto a qué son incidentes. En Wisconsin y New York, aparentemente, un vendedor viajante puede ir al cuarto de servicio y está protegido, *pues un acto de la naturaleza da lugar a un incidente;* pero si se baña, *excepto en un cuarto suministrado para dicho fin por el patrono,* está haciendo algo puramente personal, realizando algo que no es incidental a su

empleo. El mismo vendedor mientras se hospeda y duerme en un hotel perteneciente al patrono o en un hotel de un extraño seleccionado por el obrero y pagado por el patrono, en la mayoría de los Estados está protegido del fuego y *otros peligros* sin prueba de que el riesgo ha aumentado, *pues el alojamiento por ese hecho se convierte en un incidente contractual de su empleo.*" (Bastardillas nuestras.)

Y véanse los casos citados en los escolios 66 al 84 de dicha obra.

En cuanto a este aspecto, el caso no es enteramente nuevo en esta jurisdicción. En el de *Cordero, Admor.* v. *Comisión Industrial,* 61 D.P.R. 361, sin haberse probado qué fué lo que indujo a un obrero a salir del sitio donde trabajaba como engrasador en una planta eléctrica e ir y acercarse a una caseta de pararrayos, fuera de la casa de máquinas, pero en terrenos del patrono, donde apareció electrocutado, resolvimos a la pág. 367–8 que " . . . la salida del obrero tiene que atribuirse a la necesidad de realizar algún acto conforme a la naturaleza humana para poder continuar cumpliendo los deberes de su empleo, y a la casualidad su contacto con los alambres de los pararrayos que allí tan cerca e insuficientemente resguardados, tenía el patrono", y que era " . . . un acto inherente al empleo que el obrero saliera de la casa de máquinas a respirar o *a satisfacer cualquiera otra necesidad orgánica* para continuar cumpliendo su deber." (Bastardillas nuestras.) En dicho caso citamos el de *Achibald* v. *Ott,* 87 S.E. 791, en el que se expone la doctrina aplicable en esta forma:

"Tales actos necesarios para la vida, comodidad y conveniencia del obrero mientras está en el trabajo, *aunque lo sean estrictamente personales, y no actos del servicio, son incidentales a su labor, y un daño sufrido al realizarlos se reputa que ha surgido como consecuencia del empleo.* Un hombre debe respirar y tomar agua a ratos, mientras está en su trabajo. En estos y otros momentos concebibles el obrero se atiende a sí mismo, pero en un sentido remoto estos actos contribuyen a la promoción del trabajo. *Vennen* v. *New Dells Lumber Co.* (Wis.) 154 N. W. 640; *Zabriskie* v. *Erie R. Co.,* 85 N. J. Law, 157, 88 Atl. 824. Que tales actos se realizarán en el curso del

empleo tuvo necesariamente que tomarse`en consideración, siendo *incidentes inevitables*. Esos riesgos concurrentes son, en consecuencia, *riesgos incidentales*. Al mismo tiempo daños ocasionados por ellos son accidentes que resultan del empleo.'' (Bastardillas nuestras.)

Véase, además, 1 Schneider, *Workmen's Compensation Law*, 858, sec. 278, y casos citados.

De acuerdo con las circunstancias concurrentes en el presente caso que demuestran que el obrero estaba obligado a permanecer en el hotel durante la noche, que era la primera vez que se hospedaba en dicho hotel y por tanto, desconocía la situación exacta de la puerta del cuarto de servicio y equivocadamente abrió la del lado, la cual no estaba cerrada con llave o incomunicada no obstante constituir un peligro latente ya que conducía al callejón que existía y al cual cayó el obrero desde la segunda planta del hotel, el accidente debe considerarse como uno incidental al empleo del recurrente y como consecuencia del mismo.

*Procede revocar la resolución recurrida y devolverse el caso a la Comisión Industrial para ulteriores procedimientos.*

El Juez Asociado Sr. De Jesús no intervino.