VÍCTOR EMMANUELLI, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada; DEPARTAMENTO DE LA POLICÍA INSULAR, patrono.

Núm. 397.—*Sometido:* Enero 10, 1949. *Resuelto:* Abril 21, 1949.

*Luis A. Archilla Laugier,* abogado del peticionario; *Ángel de Jesús Matos, M. Maldonado Pacheco* y *Aída Casañas Marengo,* abogados del Fondo del Estado.

El Juez Asociado Señor Negrón Fernández emitió la opinión del tribunal.

El Administrador del Fondo del Seguro del Estado denegó compensación a Víctor Emmanuelli, Jefe de la Policía Insular, por una caída sufrida el día 23 de julio de 1947, mientras se encontraba de servicio en el pueblo de Bayamón, al resbalar en los momentos en que subía la acera de la Calle Maceo, yéndose de espaldas y dando con su cuerpo contra un poste de la luz eléctrica. No conforme, apeló Emmanuelli para ante la Comisión Industrial y ésta, luego de una vista en sus méritos, desestimó la apelación por el fundamento de que se trataba de un riesgo ordinario de la calle y que en tales circunstancias el accidente no era compensable. Aplicó al caso de autos lo resuelto por este Tribunal en el caso de *Ríos* v. *Comisión Industrial,* 66 D.P.R. 404.

Solicitada la reconsideración en término hábil, la misma fué declarada sin lugar, interponiendo entonces Emmanuelli recurso de revisión para ante este Tribunal.

Los hechos no controvertidos, según los resume la Comisión Industrial en la Resolución recurrida, son los siguientes:

"De toda la prueba practicada se probó, sin lugar a dudas, que el 23 de julio de 1947, entre 11:00 y 11:30 A. M., el peticionario, encargado de la jefatura de la Policía Insular de Bayamón, por ausencia de su superior en jerarquía, salió del cuartel en su visita de inspección de los guardias que estaban en servicio activo ese día

en la población, y mientras iba por la calle, en dirección a la esquiña Oller a inspeccionar el guardia de servicio en dicho sitio, y en los momentos en que pasó frente a la corte de distrito, se detuvo para atender a Angelino Rivera y contestarle ciertas preguntas que él hiciera en relación con su traslado a dicha población; que al continuar la marcha para el sitio que iba a inspeccionar, tropezó con el encintado de la acera, y se fué hacia atrás recibiendo golpes con el poste de la luz que allí había; que lo llevaron a la clínica del Dr. Meléndez de Bayamón, y que este accidente le ocurrió precisamente cuando subió su pie izquierdo a la acera para continuar la marcha.''.

Luego, llega a las siguientes conclusiones:

''A nuestro juicio, de acuerdo con toda esta prueba, y a tenor de la constante jurisprudencia en casos similares a éste, tenemos que llegar a la conclusión de que estamos frente a un riesgo ordinario de la calle en el que no existe circunstancia alguna para poderlo sacar de la regla general aplicable a estos casos, y hacerlo compensable.

''Nuestro más alto Tribunal recientemente hizo un estudio completo de la interpretación de la ley y la jurisprudencia en estos casos (véase *Ríos v. Comisión*, 66 D.P.R. 404), y la misma jurisprudencia aplicada al caso de Ríos debe aplicarse al de autos, por lo que se desestima el recurso interpuesto, y se confirma en todas y cada una de sus partes la resolución del Administrador del Fondo del Seguro del Estado de noviembre 12, 1947.''

No hay controversia, pues, de acuerdo con los hechos según los resume la propia Comisión recurrida, en cuanto a que Emmanuelli estaba encargado de la Jefatura de la Policía Insular de Bayamón el 23 de julio de 1947, en ausencia de su superior en jerarquía, y que salió del Cuartel entre once y once y media de la mañana en gestiones propias de su cargo, o sea, a inspeccionar a los guardias que estaban de servicio ese día en la población. En tales circunstancias, estando ya Emmanuelli en el curso de su empleo cuando sufrió la caída, no es de aplicación al de autos el caso de *Ríos v. Comisión Industrial,* supra,[1] citado en apoyo de sus

-[1] Tampoco son de aplicación, por los mismos motivos, los de *Pérez* v. *Comisión Industrial (Per Curiam)* y *Guillot* v. *Comisión Industrial* citados en

conclusiones por la Comisión recurrida. *Malavé* v. *Comisión Industrial,* 69 D.P.R. 66, 70.

Para determinar el *ratio decidendi* de un caso, deben examinarse los hechos que sirven de base a la decisión. *Echeandía* v. *Saldaña,* 61 D.P.R. 799, 803. Los del caso de *Ríos* establecen que se trataba allí de un accidente ocurrido al salir el Jefe Ríos de su casa y disponerse a cruzar una zanja entre la verja de su casa y la calle, al dirigirse hacia un automóvil que habría de conducirlo al Cuartel de la Policía de Fajardo. No había aún comenzado su trabajo. Al confirmar este Tribunal la resolución de la Comisión Industrial denegando compensación, aplicó la regla seguida en *Pérez* v. *Comisión Industrial,* 53 D.P.R. 960 (*Per Curiam*) y *Guillot* v. *Comisión Industrial,* 60 D.P.R. 674, en el sentido de que "en ausencia de circunstancias excepcionales, accidentes sufridos en la vía pública *al ir y venir del trabajo,* no son compensables." (Bastardillas nuestras). En el caso de autos, Emmanuelli *ya estaba* en su trabajo y se encontraba en el trayecto del Cuartel al sitio en que habría de comenzar la inspección de los guardias bajo su mando. La regla, por lo tanto, para determinar la compensabilidad del accidente por él sufrido, no es la de los accidentes ocurridos en la vía pública *al ir y venir del trabajo,* con sus excepciones,([2]) y sí la de aquéllos ocurridos en la vía pública, mientras se

el de *Ríos* y en el texto de esta opinión. En el de *Pérez* se trataba de una profesora de instrucción pública que resbaló en la carretera al ir a abordar una guagua frente a su casa para *dirigirse a* su trabajo. Se le denegó compensación. En el de *Guillot,* de un obrero de una colonia de caña quien, luego de rendir su labor a las 4:30 de la tarde y de asearse y cambiar sus ropas de trabajo por las de la calle, montó en su bicicleta, medio de transporte que utilizaba para trasladarse de su residencia al lugar de su trabajo, y fué arrollado por un automóvil mientras caminaba en su bicicleta por la carretera pública que conduce de Ponce a Guayama, de regreso a su residencia. También se denegó la compensación.

([2])*Atiles* v. *Comisión Industrial,* 64 D.P.R. 618; *Atiles* v. *Comisión Industrial,* 63 D.P.R. 806, en el que dijimos que "el *ir y venir* del trabajo, bajo circunstancias ordinarias, no es una actividad realizada *en el curso del empleo* . . . " (Bastardillas nuestras); *Cordero* v. *Comisión Industrial,* 60 D.P.R. 873.

está en el curso del trabajo o empleo, tal como la misma prevalece hoy día en la mayoría de las jurisdicciones.

▮▮▮▮▮ La doctrina de los "riesgos de la calle" (*street risks*) fué aplicada en los Estados Unidos al adoptar algunas cortes el punto de vista de que accidentes ocurridos debido a riesgos a que estaba expuesta la comunidad en general no eran compensables, por no ser tales riesgos peculiares al empleo en sí.[3] Pero aun bajo ese punto de vista, si el trabajo requería que el empleado estuviera *constantemente* en la calle, se le consideraba expuesto en mayor grado a tales riesgos, y accidentes en esas circunstancias eran compensados.[4] Dicha doctrina, sin embargo, ha sido descartada en casi la totalidad de las jurisdicciones, en las que prevalece hoy día la regla de que cuando un empleo expone a una persona a los riesgos ordinarios de la calle, aun ocasionalmente, un accidente en el curso del mismo es compensable.[5]

Para ilustrar mejor la aplicación de dicha regla al presente caso, nos hemos limitado a citar en la nota (5), supra, de entre la mucha jurisprudencia al efecto, casos de accidentes sufridos en la calle *con motivo de caídas*. En el de *Locke v. County of Steele* (1947) 223 Minn. 464, 27 N.W.2d 285, se trataba de una taquígrafa que trabajaba en la oficina del

---

[3] *Hewitt's Case* (1916) 225 Mass. 1, 113 N.E. 572; *Donahue's Case* (1917) 226 Mass. 595, 116 N.E. 226; *Colarullo's Case* (1927) 258 Mass. 521, 155 N.E. 425 (por el que se revocó el *Cook's Case* (1923) 243 Mass. 572, 137 N.E. 733, en el que se había adoptado el punto de vista de que un accidente era compensable si el "riesgo de la calle" era *incidental* al empleo) y casos citados en la monografía de 51 A.L.R., págs. 511 y 512. Véanse monografías en 80 A.L.R. 126 y 139 A.L.R. 1472.

[4] *Keany's Case* (1919) 232 Mass. 532, 122 N.E. 739; *Moran's Case* (1920) 234 Mass. 466, 125 N.E. 591; véanse monografías citadas en la nota (3).

[5] *Locke v. County of Steele* (1947) 223 Minn. 464, 27 N.W.2d 285; *New Amsterdam Casualty Co. v. Hoage* (1932 App. D.C.) 62 F2d 468, *certiorari* denegado en 288 U.S. 608, 77 L. ed. 982; *Central Surety & Ins. Corp. v. Court* (1931) 162 Tenn. 477, 36 S.W.2d 907; *Johnston v. W. S. Nott Co.* (1931) 183 Minn. 309, 236 N.W. 466; *Wilber v. Fonda* (1924) 208 App. Div. 249, 203 N.Y. Supp. 336; *Schroeder & Daly Co. v. Ind. Comm.* (1919) 169 Wis. 567, 173 N.W. 328; *Redner v. H. C. Faber & Son* (1918) 223 N.Y. 379, 119 N.E. 842; Horovitz, *Workmen's Compensation*, págs. 96 *et seq.* Véanse además las monografías citadas en la nota (3).

superintendente de escuelas en el Condado de Steele, en Minnesota, por un salario de setenta dólares al mes. Como parte de sus funciones tenía que ir diariamente al mediodía al correo a buscar la correspondencia. En una ocasión, al dirigirse a la oficina de correos a cumplir con esa parte de sus deberes, resbaló sobre el hielo cayendo y produciéndose varias lesiones. Además de resolver que se trataba de un accidente ocurrido en el curso del empleo, la Corte Suprema de Minnesota, siguió la regla de que cuando un trabajo requiere que un empleado use la calle para realizar sus funciones, accidentes ocurridos en el curso del mismo y que provengan de los riesgos ordinarios de la calle (*street risks*) son compensables, no importa que otras personas no empleadas estén expuestas a los mismos riesgos.

En el de *New Amsterdam Casualty Co.* v. *Hoage* (1932, App. D.C.) 62 F.2d 468, *certiorari* denegado en 288 U.S. 608, 77 L. ed. 982, se trataba de un agente de periódico que trabajaba para el Washington Post Company y al cruzar una calle en la ciudad de Washington sufrió una caída, a consecuencia de la cual se fracturó el cráneo, falleciendo pocos días después. Además de resolver otros extremos que es innecesario mencionar ahora, la Corte de Apelaciones del Distrito de Columbia se expresó así: "Somos de opinión que los hechos, según surgen del récord, son suficientes para sostener la decisión del Comisionado. Se admite que al momento del accidente Brosnan actuaba en el curso de su empleo. Él era un agente de un periódico y sus deberes requerían que fuera de sitio a sitio en la ciudad. Esto significaba que sus viajes podían propiamente ser a pie y que tuviera que cruzar aceras y calles de la ciudad en el curso de su trabajo. Cuando Brosnan caminaba por las calles de la ciudad actuaba en forma similar a un obrero caminando por los terrenos de la factoría o la fábrica. Fué, por lo tanto el empleo de Brosnan lo que lo llevó a sufrir la caída accidental que resultó en su muerte.

"En los comienzos de la administración de las leyes de compensaciones a obreros, frecuentemente se adoptó la regla de que accidentes ocurridos en la vía pública debido a los riesgos del tránsito no surgían 'como consecuencia' del empleo. Esta regla se fundaba en la teoría de que tales riesgos eran comunes al público en general y no incidentales a empleos en particular, y se sostenía que tales leyes no tenían el propósito de eximir al empleado de tales riesgos. Esta doctrina, sin embargo, ha sido abandonada. Ahora se sostiene por el peso de las autoridades que si un empleado en el curso de su empleo tiene que pasar por las calles y en ellas sufre un accidente por razón de los riesgos de la calle, tal accidente surge 'como consecuencia' así como en el curso del empleo."

En el caso de autos el Jefe Emmanuelli estaba en el curso de su empleo y la caída por él sufrida al dirigirse a la inspección de los guardias que estaban bajo sus órdenes, ocurrió como consecuencia del mismo, ya que su empleo lo exponía a los riesgos de la calle (*street risks*) y en su consecuencia éstos eran incidentales a su trabajo. En tales circunstancias, tiene derecho a la protección de la ley.

*La resolución recurrida será revocada y devuelto el caso a la Comisión Industrial para ulteriores procedimientos no inconsistentes con esta opinión.*