JOSÉ R. SANTIAGO, demandante y recurrente, *v.* SALVADOR E. SUAZO, demandado y recurrido.

*Número:* 314  *Resuelto:* 15 de marzo de 1963

*Félix Ochoteco, Jr.,* abogado del recurrente; *Juan B. Soto,* abogado del recurrido.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Mediante contrato privado otorgado el 1ro. de octubre de 1956 José R. Santiago y Tomás Casiano constituyeron una sociedad denominada "Tropical Garden" para operar

una cafetería del mismo nombre situada en el Centro Comercial del Caserío Lloréns Torres. Santiago sería el socio capitalista y Casiano el industrial. Éste sería el administrador del negocio y todas las operaciones se harían a su nombre incluyendo el arrendamiento del local propiedad de la Autoridad sobre Hogares. Recibiría el 30% de los beneficios y el socio capitalista el otro 70%. Al venderse o liquidarse el negocio la totalidad del capital recobrado pertenecería exclusivamente al socio capitalista, Sr. Santiago.(¹)

Cerca de un año después de estar operando el negocio decidieron venderlo. El comerciante Salvador E. Suazo interesó comprarlo y al efecto se entrevistó con el socio industrial y administrador del negocio, Sr. Casiano. Suazo vio que las patentes figuraban a nombre de Casiano y comprobó además en la Autoridad Sobre Hogares que Casiano era el arrendatario del local. A los fines de la negociación, Casiano llevó siempre a Suazo donde Juan A. Santiago, hermano y representante del socio capitalista en la concertación del contrato de compraventa.

En 28 de septiembre de 1957, José R. Santiago vendió el negocio a Suazo por la suma de $10,000. Este precio incluia tanto el valor del mobiliario y equipo como el uso del local. En esa misma fecha y para pagar el precio de la compraventa, Suazo, por sí y como apoderado de su esposa suscribió y entregó al vendedor Santiago un pagaré al portador por la suma de $10,000, con intereses al 8% anual, más $1,000, para costas y honorarios de abogado, garantizado el mismo hipotecariamente sobre un inmueble sito en Guaynabo. En la misma fecha del otorgamiento del referido pagaré hipotecario, Suazo pagó al vendedor la suma

(¹) En 15 de junio de 1956 la Autoridad Municipal Sobre Hogares de la Capital había dado en arrendamiento a Casiano el local para la explotación de la cafetería. La razón para que Casiano figurara como arrendatario era que el socio capitalista no cualificaba para ello.

de $1,000, expidiéndole éste dos recibos por $500 cada uno cuyo texto es como sigue:

"Recibí del Sr. Salvador E. Suazo la cantidad de Quinientos Dólares ($500.00) para abonar al pagaré hipotecario de Diez Mil Dólares ($10,000.00) constituído según Escritura Núm. 189 del 28 de septiembre de 1957 ante el Lcdo. José Quiñones Elías.

"Santurce, Puerto Rico, a 1ro. de octubre de 1957.

"JOSÉ R. SANTIAGO

"Por: ....................

"*Juan A. Santiago*

"Conforme:

"(Fdo.) S. E. SUAZO

"Testigo.

"(Fdo.) CARMEN S. DE PÉREZ

"*Carmen S. de Pérez*"

Las conversaciones y las transacciones se realizaron siempre en la oficina de José R. Santiago, hermano del vendedor.

Suazo tomó posesión material del negocio y comenzó a explotarlo. Eventualmente logró que la Autoridad sobre Hogares le transfiriera el contrato de arrendamiento del local. Aparentemente el negocio no era lucrativo y durante unos nueve meses dejó de pagar el canon de arrendamiento del local.[2] Tampoco pagó los intereses sobre los $9,000 que adeudaba a Santiago.

Así las cosas Suazo convino con la Autoridad sobre Hogares que ésta se hiciera cargo del negocio y que cobrara la deuda por concepto de cánones de arrendamiento del producto de la venta del equipo y mobiliario. Fue vendido dicho equipo y mobiliario en la suma de $2,700, de la cual la Autoridad sobre Hogares cobró $2,034 que se le adeudaban en concepto de cánones de arrendamiento y la diferencia de $666 fue entregada a Suazo.

---

[2] Esta deuda incluia cánones correspondientes a meses anteriores y meses posteriores a la fecha en que el contrato de arrendamiento se transfirió a nombre de Suazo.

En junio de 1958, José R. Santiago instó acción contra Suazo sobre ejecución de hipoteca por la vía ordinaria. En virtud de una cláusula de vencimiento acelerado que contenía la escritura de hipoteca, (³) reclamó los $9,000 de principal, $560 de intereses vencidos desde octubre 1 de 1957 y $1,000 convenidos para costas, gastos y honorarios de abogado.

El demandado Suazo contestó aceptando el hecho del otorgamiento del pagaré hipotecario y que el demandante fuera su tenedor pero negó que éste lo hubiera adquirido por justa o suficiente causa. Negó además que adeudara la cantidad reclamada como intereses. Finalmente estableció una reconvención alegando que él había comprado el negocio "Tropical Garden" a un hermano del demandante por la suma de $10,000 que se comprometió a pagar el día 28 de septiembre de 1959, garantizando con un pagaré hipotecario y

"2—Que dicho demandado compró dicho negocio y firmó la obligación por error, dolo y falsedad, ya que desconocía que dicho negocio era propiedad de Tomás Casiano, a nombre de quien aparecen las patentes municipales e insulares así como el contrato de arrendamiento celebrado con la Autoridad de Hogares de P. R.

"3—Que el demandado, a pesar de sus múltiples gestiones, no ha podido conseguir se traspasen dichas patentes a su nombre, ni ha obtenido el dominio absoluto del mismo, y que dicho defecto era conocido del vendedor y del demandante y desconocido para el comprador.

"4—Que el demandado tiene el fundado temor de ser perturbado en la posesión y dominio de la cosa comprada, o por una acción reivindicatoria por parte del señor Tomás Casiano."

Celebrado el juicio, donde quedaron establecidos los hechos que hemos relatado al comienzo de esta opinión, el tribunal de instancia dictó sentencia declarando sin lugar la

---

(³) Fué condición expresa del contrato de hipoteca, lo siguiente:
"La falta de pago de tres mesadas de intereses consecutivas, dará derecho al acreedor a declarar vencida la hipoteca."

demanda y con lugar la reconvención. En su consecuencia decretó la cancelación del pagaré hipotecario y de la correspondiente inscripción de la hipoteca en el Registro de la Propiedad y además ordenó al demandante restituir al demandado los $1,000 que éste abonó al precio de venta, menos los $666 que dicho demandado retuvo del precio de venta del mobiliario y equipo.

El tribunal sentenciador resolvió que el contrato de compraventa celebrado entre el demandante y el demandado era nulo e inexistente porque no siendo el demandante dueño del contrato de arrendamiento del local, no podía venderlo, siendo ilícita esa parte del objeto del contrato. Resolvió además que como la ilicitud de uno de los objetos del contrato se debió a la culpa del demandante, era de aplicación lo dispuesto en 31 L.P.R.A. sec. 3517, inciso 2, en relación con lo dispuesto en la sec. 3514.

■ Algunas de las conclusiones de hecho que erróneamente formuló el tribunal a quo dieron base a las determinaciones de derecho en que descansa la sentencia dictada por dicho tribunal. La conclusión de hecho número 6, reza así:

"6.—La sociedad entre el demandante y Casiano fue aparentemente liquidada antes de que el primero vendiera al segundo, sin que la liquidación arrojara beneficios.(⁴) Sin embargo, el demandante ocultó al deman-

---

(⁴) Suazo declaró:

"P. ¿El primero de octubre, en la creencia de que el negocio era del señor Casiano como usted ha afirmado, usted le entregó a Juan Angel Santiago mil dólares?

"R. Sí, señor.

"P. ¿Y cómo usted explica eso?

"R. Porque para todas las cosas más o menos Casiano hacía ver que le debía o que tenía un negocio o una sociedad con el señor Juan Angel Santiago; y se hacía todo en la oficina del señor Santiago.

"P. Mostrándole estos recibos...

"R. Admito esto, que le di estos mil dólares.

"P. Fíjese en la firma.

"R. Sí, señor.

"P. ¿Dice o no dice, 'José R. Santiago por Juan Angel Santiago'?

dado que Casiano era el arrendatario del local. Tampoco le informó que las patentes estaban a nombre de Casiano."

El escolio (4) insertado en dicha conclusión dice: "También es aparente que el valor del derecho de uso del local no fue considerado como parte del activo sujeto a liquidación."

Si se examina la transcripción de la evidencia se verá que estas conclusiones no están sostenidas por la prueba. El único testigo que declaró sobre la liquidación de la sociedad existente entre el demandante Santiago y Casiano fue el propio demandante. Copiamos del récord la parte pertinente de su testimonio:

"P. ¿El señor Casiano lo ha requerido a usted para que liquide ese negocio en alguna forma?

"R. No, señor.

"P. ¿Para que haga la liquidación de su sociedad?

"R. La sociedad se liquidó.

"P. ¿Se liquidó?

"R. Sí, señor.

"P. ¿Y se liquidó cuánto tiempo antes de la transacción con el señor Suazo?

"R. La sociedad se liquidó al tiempo de la venta.

"P. ¿Ah? ¿Para el mismo tiempo de la venta?

"R. Al efectuarse la venta se liquidó la sociedad.

"P. ¿Entonces al efectuarse la venta estaban presentes su hermano, el señor Suazo, y el señor Casiano?

"R. Así creo yo.

"DEMANDADO: El documento habla por sí mismo, señor Juez.

"DEMANDANTE: Sí, exactamente. No tiene que contestar el testigo si no desea.

"TESTIGO:

"Sí, yo lo firmé.

"P. ¿Y eso prueba lo que dice ahí?

"R. Sí, señor. Yo le di a él los mil dólares.

"P. ¿Sabía usted en ese momento si ese negocio era del señor José R. Santiago?

"R. No, señor. En ningún momento lo sabía.

"P. ¿Sin embargo se firmaron estos recibos en esa forma?

"R. Sí, yo admito eso. Yo di los dos mil dólares y seguí caminando. Admito eso." (T.E. págs. 38 y 39.)

"P. ¿Y en qué consistió la liquidación con respecto al señor Casiano?

"R. Tendría que explicar yo el arreglo que había con el señor Casiano.

"P. ¿Cuál fue el arreglo? El Señor Tomás Casiano es la persona que está frente al negocio. Las patentes están a nombre de él. El contrato de arrendamiento también está a nombre de él. Usted dice que cuando se hizo el negocio con el señor Suazo, y se otorgó la escritura, todavía usted era socio del señor Tomás Casiano. Mi pregunta es en qué forma se le liquidó al señor Casiano.

"R. Como no hubo beneficios... El señor Casiano, el arreglo que tenía conmigo, es que si había beneficios él percibiría treinta por ciento de los beneficios. Como no hubo beneficios no se le pudo liquidar. O sea, se liquidó, pero no le pudo tocar ninguna cantidad.

"P. ¿Entonces eso significaría treinta por ciento de los diez mil dólares?

"R. Es que no hubo beneficios.

"P. ¿Y los diez mil dólares?

"R. Yo puedo probar que la inversión allí era mayor de diez mil dólares.

"P. Pero ustedes habían acordado que el precio era diez mil dólares.

"R. Eso era parte de la inversión que yo hacía." (T.E. págs. 15-16.)

En cuanto a que el demandante ocultó al demandado que Casiano era el arrendatario del solar y que tampoco le informó que las patentes estaban a nombre de Casiano, la evidencia en conjunto demuestra que esa conclusión no encuentra base razonable en la prueba. Difícil es creer que un comerciante que va a invertir una suma de $10,000 en la compra de un negocio de cafetería en explotación, realice el negocio sin enterarse de quién es el dueño del negocio, quién el arrendatario del local en que opera y a nombre de quién figuran las patentes exigidas por la ley para la explotación de dicho negocio. De ahí que el demandado Suazo se expresara sobre esos extremos en la siguiente forma:

"P. ¿Al usted hacer la transacción se cercioró usted del nombre a quien figuraba esa cafetería?

"R. No, señor.

"P. ¿De qué era el negocio?

"R. Una cafetería, y tenía también licores, cigarrillos y esas cosas.

"P. ¿Vio usted las patentes?

"R. Sí, señor.

"P. ¿Tenía ese negocio patentes de licores y cigarrillos?

"R. Sí, señor, las tenía. Tenía patentes municipal y estatal.

"P. ¿A nombre de quien figuraban esas patentes?

"R. A nombre de Tomás Casiano Morales todas.

"P. ¿Antes de hacer el negocio usted, de compraventa de ese negocio, averiguó usted algo en alguna forma en relación con el local donde operaba ese negocio?

"R. No, señor.

"P. ¿No se enteró sobre a quién se le pagaba el local?

"R. Porque el señor Tomás Casiano me dijo que estaba el local a nombre de él, fuimos a la Autoridad de Hogares, y estaba a su nombre.

"P. ¿Entonces hizo usted la gestión de averiguar eso?

"R. Sí, señor.

"P. ¿Cómo entonces dijo antes que no?

"R. ¡Ah! Sí, señor. Se hizo, sí, señor.

"JUEZ:

"P. ¿Antes de hacerse el negocio sabía usted o no sabía que las patentes estaban a nombre de Tomás Casiano?

"R. No, señor.

"P. ¿No lo sabía?

"R. No.

"DEMANDADO:

"P. ¿Qué?

"R. Que no sabía que las patentes estaban a nombre de Tomás Casiano Morales. Hice el negocio con él y naturalmente, me llevó donde el señor Juan Angel. Hablamos del negocio y me dijo él que el señor..." (T.E. págs. 26 y 27.)

A la única conclusión que se puede llegar es que Suazo sabía, al momento de formalizar el contrato de compraventa que Casiano figuraba como el arrendatario del local y que las patentes se habían expedido también a su nombre.

Tampoco hay base en la prueba para la inferencia de que también "es aparente que el valor del derecho de uso del local no fue considerado como parte del activo sujeto a liquidación". En el contrato de sociedad, Casiano figuraba como un socio industrial. No hizo aportación alguna a dicha sociedad, con excepción de su trabajo. Se acordó que Casiano figurara como arrendatario del local, por la razón de que Santiago no cualificaba para ello y asimismo se acordó que las patentes figuraran a nombre de Casiano. Mas esto no significa que Casiano fuera el dueño del derecho de uso de dicho local, o sea, el dueño del contrato de arrendamiento. Así lo entendieron las partes y el propio Casiano cuando se formalizó el contrato de compraventa. Suazo sabía que existía una sociedad entre Santiago y Casiano o que por lo menos existían relaciones entre ellos respecto a la explotación de la cafetería. Al formalizarse el contrato, Suazo entró en la posesión material del local. Casiano no hizo resistencia a ello y nada exigió en ese momento a Suazo. Éste comenzó a pagar los cánones de arrendamiento aunque todavía figuraba Casiano como arrendatario. Y ya hemos visto que la venta del negocio incluia la cesión del arrendamiento que estaba sujeto a la condición de que la Autoridad sobre Hogares la aceptara. Por otro lado es inconcebible que Suazo comprara la cafetería para explotarla y que no incluyera en el contrato la cesión del arrendamiento del local. Y como cuestión de hecho cuando la arrendataria se avino a transferir el arrendamiento a Suazo, éste nada pagó a Casiano.

■ Hubo pues un contrato de compraventa con todos los requisitos exigidos por la ley. Art. 1213 del Código Civil (31 L.P.R.A. sec. 3991). No era por tanto, nulo e inexistente, según resolvió el tribunal de instancia. Ni el consentimiento, ni la causa del contrato en discusión adolecen de vicio alguno. Hubo una causa lícita y el consentimiento prestado por el comprador Suazo no se prestó por error sobre la sustancia del objeto del contrato, según alega el recurrido. Repetimos que Suazo sabía que él Casiano figuraba

como arrendatario del local donde estaba establecido el negocio. Sin embargo compró al demandante Santiago y a éste entregó el pagaré hipotecario que garantizaba el precio de venta y además le abonó $1,000, recibiendo un recibo de Santiago que Suazo firmó expresando por escrito su conformidad.

Aun suponiendo que el hecho de que el arrendamiento del local figurara a nombre de Casiano produjera un vicio en parte del objeto del contrato que pudiera producir su anulabilidad, Suazo, con sus actuaciones, lo ratificó totalmente. Basta recordar que Suazo 1) pagó los primeros cánones de arrendamiento a nombre de Tomás Casiano, 2) que posteriormente se le transfirió el contrato de arrendamiento, 3) que dio su conformidad para que el negocio se vendiera, 4) que con el producto de la venta pagó una deuda a la Autoridad sobre Hogares, deuda ésta que Suazo asumió como arrendatario del local, y 5) que se apropió como dueño del remanente del producto de la venta del negocio, todo ello sin la intervención del vendedor y aun después que (según declaró Suazo) surgieron inconvenientes con motivo de figurar Casiano como arrendatario del local. Arts. 1263 y 1264 del Código Civil (31 L.P.R.A., secs. 3522 y 3523). En vista de estos hechos, lo menos que podría decirse es que Suazo estaba impedido de atacar la validez del contrato de compraventa. *Cf. González* v. *Sucn. Díaz*, 69 D.P.R. 643; *García* v. *Central Alianza*, 69 D.P.R. 910; *Campos* v. *Central Cambalache*, 64 D.P.R. 58; *Amy Ramú* v. *Sucn. Verges*, 37 D.P.R. 49.

*Es innecesario extendernos más en esta opinión. La sentencia dictada por el tribunal a quo es errónea y debe revocarse, dictándose en su lugar otra declarando con lugar la demanda y sin lugar la reconvención.*